UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

_____

| | |
|---|---|
| IN RE PRADAXA ) | MDL No. 2385 |
| (DABIGATRAN ETEXILATE) ) | 3:12-md-02385-DRH-SCW |
| PRODUCTS LIABILITY ) | Judge David R. Herndon |
| LITIGATION ) | |

_____

**This Document Relates to:**

*Colletta v. Boehringer Ingelheim Pharmaceuticals, Inc. et al.*, No. 3:12-cv-60081-DRH-SCW

ORDER

**HERNDON, District Judge:**

### I.   INTRODUCTION

This matter is before the Court on plaintiff's motion to vacate (Doc. 12) the Court's order dismissing the above captioned case with prejudice (Doc. 10). Defendant, Boehringer Ingelheim Pharmaceuticals Inc. (BIPI) has responded (Doc. 13). For the reasons discussed herein, the motion to vacate (Doc. 12) is **DENIED.**

### II.   BACKGROUND

On May 28, 2014 the Court announced a Settlement Program, created by a private Master Settlement Agreement ("MSA"), negotiated between the Pradaxa MDL Plaintiffs' Leadership Counsel and the Boehringer Defendants (12-2385 Doc. 515). The Settlement Program has resolved thousands of Pradaxa personal injury claims. Despite the high rate of participation in the Settlement Program, some claims remained unresolved, either because the claimants elected not to

participate in the Settlement Program or filed suit after the Settlement Program was announced and were therefore not eligible to participate in the Settlement Program.[1] Case Management Order Number 78 is a Lone Pine Order[2] adopted by the Court for the purpose of resolving the claims of these two categories of claimants.[3] Case Management Order Number 78 provided that subject plaintiffs were required to provide additional information to the defendants or risk having their cases dismissed with prejudice.

The above captioned action was transferred into MDL 2385 prior to the entry of CMO 78. Accordingly, plaintiff was required to opt-in to the Settlement Program, request an extension for more time to opt-in, or abide by the requirements of CMO 78. Plaintiff did not seek an extension or opt in to the settlement by July 9, 2014 ("Opt-In Deadline") and, as a result, this case became subject to the requirements of CMO 78. The above captioned plaintiff's CMO 78 obligations and deadlines were as follows:

---

[1] There is also a category of claimants who enrolled in the Settlement Program but, for various reasons, failed to complete the settlement process and were dismissed from the Settlement Program. This category of claimants is not in issue here.

[2] Lone Pine orders derive from a 1986 decision of the New Jersey Superior Court in *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Sup. Ct. Law Div. Nov. 18, 1986). In *Lore v. Lone Pine Corp.*, the court entered a pretrial order that required the plaintiffs to provide documentation regarding each individual plaintiff's alleged injury, including expert reports supporting causation. The fundamental purpose of a Lone Pine Order is to require plaintiffs to objectively demonstrate that there is a sufficient evidentiary basis to warrant the continued prosecution of complex and burdensome claims.

[3] Case Management Order Number 78 provides, in relevant part, as follows:

> This Order applies to all Plaintiffs with personal injury claims pending in this MDL as of the entry of this Order who elect not to participate in the voluntary settlement program, and all Plaintiffs with personal injury claims later filed in, removed to, or transferred to this MDL after the entry of this Order.

12-2385 Doc. 519.

**July 19, 2014**     Sections I.A. and B.: deadline to send written notices of records preservation to applicable pharmacies and healthcare providers.

**July 24, 2014**     Section II. A-C.: deadline to produce (1) Plaintiff Fact Sheet ("PFS"), (2) all pharmacy records of for five year period prior to date of alleged injury to present; (3) all medical records related to Plaintiff from all healthcare providers listed in PFS from five years prior to date of alleged injury to present, and (4) an affidavit attesting that all records have been collected from all pharmacies and healthcare providers and have been produced according to CMO 78.

**July 29, 2014**     Section I.C: deadline to certify to defendant that all records preservation notices were sent and provide copies.

**August 8, 2014**   Section II. D. and E.: deadline to produce expert reports on general and specific causation.

Plaintiff did not produce any of the required information or documents by the CMO 78 deadlines.

Due to the plaintiff's failure to file an Initial Claimant Certification Form as required by CMO 76,[4] discovery of the plaintiff's lack of compliance was delayed.[5] Once the issue was discovered, on October 29, 2014, BIPI provided plaintiff with a deficiency notice. Pursuant to CMO 78, after receipt of the notice, the plaintiff

---

[4] On May 29, 2014, the Court entered CMO 76 - The Initial Claimant Identification Certification Order in MDL 2385. CMO 76 requires that within seven (7) days of the entry of the Order, counsel of record in a case pending before this Court shall certify "the identities of the plaintiffs, civil action numbers and jurisdiction of each case filed by said counsel" and file an Initial Claimant Identification Certification form with the Court. Such certifications were "essential to the orderly settlement and further administration of these cases, as the certifications formed the basis of the information used by the settlement administrator and counsel to identify the universe of cases, including any cases that did not ultimately opt-in to the settlement. Any cases that were certified and that did not opt-in were required to meet the requirements of CMO 78, and if they did not, were provided deficiency notices as contemplated by CMO 78." (Court's 10/30/14 Order denying Extension to CMO 78 deadlines, 14-cv-50130 Doc. No. 6 pp. 2-3).

[5] After cross-checking all MDL cases on file against the settlement administrator's certified claims list, Defendant became aware that the Plaintiff in this matter had not filed an Initial Claimant Certification Form as required by CMO 76 and, therefore had not previously been identified as a claimant that did not opt-in to the settlement.

had 14 days to cure the identified Section I deficiencies and 20 days to cure the identified Section II and III deficiencies. The Cure Period is <u>the only extension permitted</u> under CMO 78.[6]

The plaintiff did not respond to BIPI's deficiency letter and did not provide the required information and documents by the CMO 78 cure deadlines. Accordingly, in accord with CMO 78, BIPI filed a Motion to Show Cause why the case should not be dismissed with prejudice." Pursuant to CMO 78, the plaintiff had 20 days to respond to the motion and show good cause why the case should not be dismissed. CMO 78 further provided that "[a]ny failure to respond to the Motion within the specified period shall lead to dismissal of the case with prejudice." (12-2385 Doc. 519 §§ I.D., II.G.). [7]

---

[6] CMO 78 states, in relevant part as follows: (1) as to Section I, "[a]ny Plaintiff who fails to fully comply with the requirements of Paragraphs A, B, and C above shall be provided notice of such failure by email or fax from Defendants' counsel and shall be provided fourteen (14) additional days to cure such deficiency ("Cure Period") to be calculated from the receipt of such notice of deficiency from counsel for the Defendants. No other extensions will be granted unless agreed to by all parties" and (2) as to Section II, any plaintiff who fails to comply "shall be given notice of such failure by email or fax from Defendants' counsel and shall be provided twenty (20) additional days to cure such deficiency ("Cure Period") to be calculated from receipt of such notice of deficiency from counsel for the Defendants. No other extensions will be granted" (Doc. 519).

[7] The Court notes that it repeatedly discussed the importance of strictly complying with the terms of the settlement agreement (for those who chose to opt in) and with the terms of any related case management orders (for those who chose to opt out) during several case management conferences. Parties are permitted to attend the case management conferences in person or via phone. Further, the terms of the settlement agreement and of any related CMOs clearly set forth the penalty for non-compliance. The penalty for non-compliance was likewise discussed by the Court during several case management conferences. The Court specifically notes the following:

August 26, 2014 Case Management Conference (MDL 2385 Doc. 561 p.3 l.20 - p.4 l.17):

> THE COURT: Mr. Limbacher, let me ask you, looks
> like we had spectacular success on opting in. The 130 that
> opted out are essentially people that just didn't send
> opt-in forms. We just have had incredible success on

> opting in.
>
> *MR. LIMBACHER:* We have, Your Honor. It's,
> I think, been surprising to both sides the level of
> participation. And as I mentioned, the significant majority
> of the relatively small number of cases that have opted out
> do not have pending claims.
>
> *MR. KATZ:* Your Honor, from the Plaintiffs'
> Steering Committee perspective, obviously we urge everyone
> to take the implementation order and its requirements
> extremely seriously as they would any order of this Court.
>
> *THE COURT:* That's a very good point, Mr. Katz.
> The implementation mechanism is extraordinarily important,
> and failure to follow the order of the Court in that respect
> must be -- failure to comply with the Court's order will be
> met with dismissal, and so if we don't have that compliance
> then the cases just will not progress. So even if one
> intended to opt out and proceed further, just simply won't
> happen if the plaintiffs fail to follow the implementation
> order

September 29, 2014 Case Management Conference (MDL 2385 Doc. 584 p.2 ll.13-18):

> MR. KATZ:  Suffice it to say that the claims process is going
> exceedingly smoothly, that the claims deadline has been
> almost -- it's coming up soon. There are the last handful
> of people that are still entitled to minor extensions,
> should they ask for them, but that claim process will end in
> the next few weeks, so that's going smoothly.

September 29, 2014 Case Management Conference (MDL 2385 Doc. 584 p.2 ll.24 – p.4 l.9):

> *THE COURT:* Mr. Ball, anything to add?
>
> *MR. BALL:* Yes. What I would add, Your Honor, is
> that we would confirm that funding was made, as Mr. Katz
> said, and our interest now is to make sure, as things go
> forward, that we're satisfied that all of the terms of the
> MSA, including particularly Sections 8.7 and 8.8, are
> complied with, and we'll be keeping an eye on that issue.
>
> *THE COURT:* Very good. Agree the provisions of the
> agreements and the implementation order need to be followed.
> We received reports from Providio, Brown Greer, and I
> appreciate those.
> Speaking of the implementation order, we have an
> agenda item relative to the status of that information.
>
> *MR. BALL:* Yes. The status on that is that there
> is a relatively small number of claimants that we have been

> engaged in discussions with that we will make -- have a
> necessity in the near future of filing some motions to show
> cause pursuant to the Court orders, and we would just place
> this on the agenda to give the Court a heads-up that those
> may be coming down the pike in the near future.
> *MR. KATZ:* Your Honor, nothing really to add, other
> than when the negotiations of the settlement, the
> implementation were engaged in, the PSC took those
> seriously, and we think in terms of the implementation
> order, it's something that must be followed by everybody.
>
> *THE COURT:* Well, yeah. It's quite clear what
> those requirements are, and they were negotiated at arms
> length and so they must be implemented, and the Court will
> enforce the orders that were agreed or to, or the agreements
> that were agreed to by the parties, so if they receive
> motions relative to those issues, be happy to take those up
> in due course.
> So we need to continue to make sure that these
> matters continue to move along, insure that those people who
> are to be compensated are, in fact, compensated in a timely
> manner.

November 12, 2014 Case Management Conference (MDL 2385 Doc. 598 p.3 l.15 - p.4 l.11):

> *MR. KATZ:* Timing and schedule for payments. You
> know, we're still optimistic, maybe cautiously optimistic
> that the first payments to claimants in this settlement will
> occur in December. Obviously it will all depend on lien
> resolution, and the plan would be for the first wave of
> payments to be made to claimants who have all their lien
> issues resolved; for example, people that were Medicare only
> where we have a global deal in place, or people that
> Rawlings has already cleared. So that would be the only
> hold-up, Your Honor. In fact, it looks like we'll be on
> pace for late December, first round of payments. Hopefully
> that won't change.
>
> *MR. SCHMIDT:* And we're obviously committed to that
> happening on the defense side. That's very important to us
> as well. Our only caveat -- and I don't think there's a
> disagreement on this -- is insuring that the MSA is complied
> with, but we're committed to working to get to that
> compliance.
>
> *THE COURT:* Excellent. Appreciate your
> cooperation, both sides, on that. It's critical for the
> Court to make sure that MSA is complied with and we move
> right along to try to expedite this as much as possible.

Plaintiff contends that attorney Joseph Lupinacci worked diligently on this case and attended case management hearings via telephonic conference call. Attorney Lupinacci left the firm in February

Plaintiff did not respond to the motion to show cause and, on December 16, 2014, the action was dismissed with prejudice (Doc. 10). Plaintiff now asks the Court, 8 months following the dismissal, to vacate the Order of Dismissal, reinstate the case, and allow the plaintiff an unspecified extension in which to comply with CMO 78.

### III. ANALYSIS

Despite court filings and publicly available information, plaintiff's counsel states that he first discovered BIPI's motion to show cause (filed November 20, 2014) and the Court's order of dismissal with prejudice (entered December 16, 2014) on June 17, 2015. Counsel then waited 42 days (after discovering the case had been dismissed) to file the present motion to vacate. Counsel asks the Court to vacate the order of dismissal, reinstate the case, and give the plaintiff even more time to comply with CMO 78.

Counsel bases the motion to vacate on a series of internal administrative errors, including but not limited to the following:

1. <u>Failure to follow Fichera & Miller internal policy regarding electronic notifications</u>: Alex Hattimer of the law firm Fichera & Miller, P.C. was plaintiff's original attorney of record. Fichera & Miller has an internal policy requiring attorneys to utilize the firm's general email box of

---

2014. **Plaintiff does not address whether subsequent counsel continued to attend the case management hearings via telephonic conference and/or why subsequent counsel would have been unaware of the above discussions**.

info@fichermiller.com for purposes of notice, so that all documents and communications are accessible to assistants, paralegals and attorneys of the firm. Mr. Hattimer failed to follow this policy. Instead, Mr. Hattimer registered for CMECF using his personal email account at Fichera & Miller. Accordingly, when Mr. Hattimer left Fichera & Miller, in the fall of 2013, electronic notifications generated by the Court's CM/ECF system were being sent to Mr. Hattimer's personal email account at the firm and not the firm's general email account. The Court further notes that after Mr. Hattimer left the firm, the action was assigned to Joseph Lupinacci. Joseph Lupinacci never entered his appearance on behalf of the plaintiff.[8] In February 2014, Joseph Lupinacci left the firm and Jack Marshall took over responsibility for the case. Jack Marshall never entered an appearance on behalf of the plaintiff. In February 2015, Jack Marshall left the firm and the matter was reassigned to partners Dominic Fichera and Howard Miller. Mr. Fichera and Mr. Miller never entered an appearance on behalf of the plaintiff. The Court notes that Mr. Miller filed the motion to vacate on behalf of the plaintiff on July 29, 2015 and was added to the docket at that time. However, Mr. Miller has never entered an appearance on behalf of the plaintiff as required under S.D. of Ill. Local Rule 83.1(f). Further, the Court notes that, to date, Mr. Hattimer is still listed as an attorney of record for

---

[8] Counsel for the plaintiff notes that Joseph Lupinacci did provide liaison counsel with his personal email address. This, however, is irrelevant with regard to the Court's CM/ECF system. Moreover, it does not excuse subsequent counsels' failures to provide the Court or liaison counsel with updated contact information.

the plaintiff (and through July 29, 2015, despite having left the firm in 2013, remained the *only* attorney of record for the plaintiff).

2. <u>Paralegal Suzie Florez left the firm</u>: On October 29, 2014, defendant sent a letter to attorney Hattimer via US Mail and electronic mail. Upon receiving a delivery failure notice, defendant faxed a copy of the letter to plaintiff's counsel's office. Paralegal Florez received the letter and contacted defense counsel via email. Paralegal Florez indicated as follows: (1) Howard Miller and Jack Marshall were now handling the file; (2) all email correspondence should be sent to the firm's general email account; and (3) she would update the information with the Court (Doc. 12-3). Plaintiff's counsel's information was not updated on CM/ECF as indicated by Ms. Florez. Shortly thereafter, paralegal Florez left the firm. Notably, the email sent by Ms. Florez, was also sent to attorney Jack Marshall and to the firm's general email account. Accordingly, Jack Marshall and employees with access to the general email account had notice of the defendant's deficiency letter and of the need to provide the Court with updated information. Regardless, the updated information was not provided to the Court and counsel took no action with regard to the deficiency notice.

3. <u>Blocked Emails</u>: According to counsel, in June 2015, counsel discovered "that due to an internal email problem (instead of "re-directing" the emails from CM/ECF, the sender was "blocked), none of the electronic pleadings,

notices or orders in this matter were being received or viewed by any Fichera & Miller attorneys or paralegals.

Counsel contends that as a result of the above, it was not aware of the defendant's motion to show cause (Doc. 12) and the Court's order of dismissal with prejudice (Doc. 10). BIPI notes, as does the Court, that plaintiff's motion fails to explain the following: (1) Plaintiff's failure to timely comply with CMO 78; (2) plaintiff's failure to respond to the CMO 78 deficiency letter; (3) plaintiff's failure to timely cure the CMO 78 deficiencies; and (4) plaintiff's failure to respond to BIPI's motion to show cause, which – in addition to being filed via CM/ECF – was also served via email to the email address specifically requested by plaintiff's counsel: info@ficheramiller.com.[9]

Plaintiff invokes Federal Rule of Civil Procedure 60(b)(1) and (b)(6), which permit a Court to relieve a party from a final judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect" ((b)(1)) or "any other reason that

---

[9] *See* Doc. 9 n.2 stating as follows:

> Defendant served the deficiency letter via email on October 29, 2014 to the Plaintiff's counsel listed on the complaint, Alex Hattimer, and to the email address listed on ECF (Ex. A). Late that evening, defense counsel received an automatic "delivery failure" email for Mr. Hattimer's email address. (Id). The following day, October 30, 2014, defense counsel faxed the October 29th letter to plaintiff's counsel's office (Fichera & Miller, P.C.). (Ex. B). The fax was successfully delivered. (Id.)
>
> On November 3, 2014, defense counsel received an email from the Fichera & Miller firm noting that the counsel on this case had changed to Howard Miller and Jack Marshall, that correspondence should be addressed to info@ficheramiller.com and that they would have the information updated with the Court. (Ex. C). At the time of the filing of this motion, the Plaintiff's counsel's information has not been updated on ECF as indicated in the November 3rd email. (See Ex. D, Civil Docket for Case No.: 3:12-cv- 60081, as of 11/20/2014). Nonetheless, a courtesy copy of this motion has been served on attorneys Mr. Miller and Mr. Marshall at the info@ficheramiller.com address.

justifies relief" ((b)(6)). The plaintiff has not stated grounds that would warrant relief under Rule 60(b). The explanations provided by counsel amount to attorney inattentiveness to litigation. None of the attorneys responsible for the plaintiff's case after Mr. Hattimer left the firm, filed a written entry of appearance with the Court or a motion to substitute counsel of record – a simple step that would have alleviated the current predicament. In addition, it is apparent that the string of attorneys responsible for the above captioned case did not regularly review the above captioned docket or the related Master Docket for relevant filings.[10] As the Seventh Circuit has explained, "Although attorney carelessness can constitute 'excusable neglect' under Rule 60(b)(1), attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (affirming district court's denial of Rule 60(b) motion to vacate dismissal and quoting *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004)).

Moreover, even if the plaintiff had timely responded to the motion to show cause, the action still would have been subject to dismissal with prejudice. Pursuant to CMO 78, once a CMO 78 show cause motion has been filed, the plaintiff may only avoid dismissal by a showing of good cause. The information presented by counsel with regard to failure to comply with CMO 78 does not

---

[10] Counsel contends it is not unusual, in MDL cases, for there to be a lack of activity in individual cases for an extended period of time. Accordingly, counsel was not concerned about the apparent lack of activity in the above captioned case. Counsel's assumptions about MDL litigation do not justify the failure to monitor the relevant dockets in this case.

amount to good cause. *See Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) (rejecting as good cause an attorney's difficulties communicating with his client); *Connecticut Nat. Mortg. Co. v. Brandstatter* 897 F.2d 883, 884–885 (7th Cir. 1990) (rejecting as good cause "routine back-office problems"). *See also* this Court's previous orders in the following actions: (1) *Baker v. Boehringer Ingelheim Pharm., Inc., et al.*, 3:14-cv-50002, S.D. Ill., Doc. 9 (January 8, 2015) (Order of Dismissal With Prejudice) (rejecting the plaintiff's arguments of good faith and lack of prejudice to BIPI with regard to CMO 78); (2) *Henderson v Boehringer Ingelheim Pharm. Inc., et. al.*, 3:15-px-230, S.D. Ill., Doc. 8 (June 19, 2015) (Order of Dismissal With Prejudice) (granting dismissal with prejudice for failure to comply with CMO 78); (3) *Colletta v. Boehringer Ingelheim Pharm., Inc., et al.*, 3:12-cv-60081, S.D. Ill., Doc. 10, pp. 3-4, fn. 2 (December 16, 2014) (Order of Dismissal With Prejudice noting the importance of strict compliance with the terms of the settlement agreement, including CMO 78); (4) *Wiram v. Boehringer Ingelheim Pharm., Inc., et al.*, 3:14-cv-50130, S.D. Ill., Doc. 6, p. 2 (October 30, 2014) (Order Denying Motion for Extension) ("Plaintiffs are reminded that their action will be subject to dismissal WITH prejudice in accord with the provisions of CMO 78 for failure to comply with the requirements of CMO 78"); (5) *Patterson v. Boehringer Ingelheim Pharm., Inc., et al.*, 3:14-cv-50277, S.D. Ill., Doc. 4 (October 30, 2014) (Order of Dismissal With Prejudice relating to nine individual cases in which plaintiffs failed to comply with the requirements of CMO 78); (6) *Vicari v. Boehringer Ingelheim*

*Pharm., Inc., et al.*, 3:14-cv-60022, S.D. Ill., Doc. 13 (November 14, 2014) (Order of Dismissal With Prejudice for failing to provide expert reports that met the CMO 78 requirements); (7) *Radzevich v. Boehringer Ingelheim Pharm., Inc., et al.*, 3:14-cv-60041, S.D. Ill., Doc 14 (March 27, 2015) (Order of Dismissal with Prejudice); *Jones v. Boehringer Ingelheim Pharm. Inc., et al.*, 3:14-cv-50018, S.D. Ill., Doc. 6 (June 19, 2015) (Order of Dismissal With Prejudice for failure to timely cure CMO 78 deficiencies).

### IV.  CONCLUSION

Accordingly, the motion to vacate (Doc. 12) is **DENIED.**

**IT IS SO ORDERED.**

Signed this 10th day of September, 2015.

Digitally signed by
David R. Herndon
Date: 2015.09.10
15:42:30 -05'00'

**United States District Court**